```
            UNITED STATES DISTRICT COURT
                      FOR THE
                DISTRICT OF VERMONT
```

Kirk Stutes,                         :
        Plaintiff,                   :
                                     :
    v.                               :   File No. 1:07-CV-66
                                     :
Jason Tipton, Dane                   :
Grainger, Alexandro Solis,           :
John Ferguson, Fred                  :
Figueroa, David Nellis,              :
James Turner, Corrections            :
Corporation of America,              :
Robert Hofmann, Kevin Oddy,          :
        Defendants.                  :

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### (Papers 19, 24 and 26)

*Pro se* plaintiff Kirk Stutes, a Vermont inmate incarcerated out of state in a privately-owned facility, brings this action claiming cruel and unusual punishment. Stutes alleges that while in prison in Oklahoma, he was placed in an outdoor cage in cold weather for over an hour while wearing only boxers, a t-shirt and sneakers. The defendants have moved to dismiss arguing lack of injury, lack of personal involvement, and improper venue. For the reasons set forth below, I recommend that the two Vermont defendants be dismissed from the case for lack of personal involvement, and that the remainder of the case be

transferred to the United States District Court for the Western District of Oklahoma.

## Factual Background

For the limited purpose of the pending motion to dismiss, the facts alleged in the complaint will be accepted as true. On March 23, 2006, Stutes was transported from Vermont to the North Fork Correctional Facility ("NFCF") in Sayre, Oklahoma. NFCF is owned and operated by Corrections Corporation of America ("CCA"), a private corporation headquartered in Tennessee. CCA houses Vermont prisoners pursuant to a contract with the Vermont Department of Corrections ("DOC").

On January 31, 2007, Stutes's living unit was in "lockdown" during a search for contraband. At approximately 7:20 a.m., several officers entered his cell to begin their search. After the search, the officers notified Stutes that they would be confiscating his tweezers because they appeared to be modified. Stutes swore at one of the officers, and was immediately handcuffed. Three correctional officers – defendants Tipton, Grainger and Solis – then escorted Stutes down a set of stairs and out of the building to the segregation

exercise yard.  The yard contained 12 metal cages, each approximately 4 feet by 10 feet in size.  Stutes was placed in one of the cages.

At the time, Stutes was wearing only a t-shirt, boxer shorts, and tennis shoes.  The temperature was 27 degrees.  Stutes remained in the cage for over an hour with his hands still handcuffed behind his back.  Eventually, a fourth correctional officer retrieved him and placed him in an indoor shower cage.

Stutes alleges that his time spent outdoors in cold weather exposed him to "the potential of hypothermia, frostbite, and cold related infections such as influenza, ear infections, upper respiratory infections, bronchitis and more."  Shortly after his exposure to the cold, he began suffering from flu-like symptoms.  On February 2, 2007, he submitted a sick call request.  Stutes concedes that "colds are caused by virus," but maintains that "cold and flu season always comes during cold weather when, we suspect, cold temperatures reduce the body's resistance to such viral attacks."  (Paper 27 at 3).

Stutes alleges that his mistreatment was part of a pattern of retaliation by prison personnel arising out of his relationship with a female corrections officer. While he also claims other wrongful acts by the defendants, including mail tampering, excessive cell searches and interference with telephone calls, his legal claims center on the incident on January 31, 2007. Specifically, Stutes claims that removing him from his cell and exposing him to cold weather violated his right to be free from cruel and unusual punishment, and that the conduct of various corrections officials rose to the level of gross negligence and deliberate indifference.

The defendants now move to dismiss, arguing that Stutes was not injured and thus cannot establish a claim under the Eighth Amendment.  They also contend that several defendants, including Vermont DOC Commissioner Robert Hofmann and DOC employee Kevin Oddy, cannot be held liable under § 1983 because they were not personally involved in the allegedly wrongful conduct. Finally, the defendants move in the alternative for transfer of this case to federal court in the Western District of Oklahoma.

Discussion

I.  Motion to Dismiss Standard

On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.'"  ATSI Comms., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  The Court remains mindful that *pro se* pleadings are to be read liberally.  See Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005).

II.  Vermont Defendants

Stutes has sued the defendants in their individual capacities only.  As noted above, the defendants include Vermont DOC Commissioner Hofmann and Vermont DOC employee Kevin Oddy.  The pending motion to dismiss argues that Hofmann and Oddy cannot be liable under §

5

1983 because they were not personally involved in an alleged constitutional violation.

Stutes is asking for declaratory, injunctive and monetary relief. With respect to his requests for declaratory and injunctive relief, such relief is unavailable in suits against officials in their individual capacities. See LeBron v. Swaitek, 2007 WL 3254373, at *7 (N.D.N.Y. Nov. 2, 2007) (citing Ziemba v. Armstrong, 2004 WL 173447, at *2 (D. Conn. July 30, 2004)). As to damages, "[i]t is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). While "*respondeat superior* cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a

policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

It is clear from the complaint that Hofmann had no direct involvement in the events of January 31, 2007. Prior to that date, Stutes allegedly sent a letter to Hofmann asking for protection from retaliation.  He also submitted a formal grievance form to Hofmann after-the-fact regarding the cold weather incident.  Hofmann did not reply to either of these communications.  Courts in this circuit have uniformly held that a supervisor's receipt of a letter or grievance will not establish personal involvement.  See Woods v. Goord, 2002 WL 731691, at *1 (S.D.N.Y. Apr. 23, 2002) (collecting cases).  As one court noted, "if mere receipt of a

letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." Walker v. Pataro, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).

Additionally, there is no indication that Hofmann was responsible for a policy or custom that led to wrongdoing, or that he may be held liable for failing to properly supervise CCA employees who committed allegedly wrongful acts. The primary claim in this case is that while imprisoned in Oklahoma, Stutes was placed in an outdoor cage wearing inadequate clothing during cold weather. Given § 1983's requirement of personal involvement, the facts alleged in the complaint cannot result in liability against the Commissioner of the Vermont DOC. The claims against defendant Hofmann should, therefore, be DISMISSED.

Defendant Kevin Oddy was, during the time period in question, the Superintendent of the Out of State Unit for the Vermont DOC. Shortly after the January 31, 2007 incident, Oddy spoke with Stutes's mother and

acknowledged that the events alleged in the complaint had occurred.  When asked if Stutes could be moved to another facility, Oddy allegedly responded that no beds were available.  (Paper 6-2 at 2).  The complaint alleges generally that Oddy was aware of "retaliatory actions being taken against plaintiff and consciously chose to ignore them," and that he should be held liable for his failure to properly supervise his subordinates.

     Like Commissioner Hofmann, defendant Oddy had no direct personal involvement in the wrongful actions allegedly taken by CCA officers in Oklahoma.  Nor is there any allegation tying him to a policy or custom that led to the wrongdoing.  While Oddy may have had notice of retaliatory conduct generally, there was no notice of conduct comparable to the alleged abuse on January 31, 2007.  Finally, Oddy cannot be held liable for failing to supervise CCA personnel.  For these reasons, the claims against defendant Oddy should also be DISMISSED.

III.  Venue

     As to the remaining defendants, the motion to dismiss argues first for dismissal, and in the

9

alternative that venue in Vermont is improper.  For reasons set forth below, the impropriety of venue in Vermont is clear.  The merit of Stutes's claim of cruel and unusual punishment is less clear.  See Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir. 1988) ("deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment"); see also Trammel v. Keane, 338 F.3d 155, 164-65 (2d Cir. 2003) (if condition is not sufficiently prolonged or severe, it does not rise to level of Eighth Amendment violation).  I therefore recommend that the remainder of the case be transferred to the more appropriate venue for further analysis and, if necessary, factual development.  See Lyon v. Cornell University, 1998 WL 226193, at *2 (S.D.N.Y. May 4, 1998) (collecting cases wherein pending motions were sent to transferee court "to decide important issues that are critical [to] the disposition of the case").

    The defendants have filed their motion under 28 U.S.C. § 1406(a), which requires dismissal if venue is improper, or a transfer to the appropriate court if a transfer would serve "the interests of justice."  28

U.S.C. § 1406(a).  The requirement of proper venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred."  Leon C. Baker, P.C. v. Bennett, 942 F. Supp. 171, 175 (S.D.N.Y. 1996).

In cases involving questions of federal law, such as Stutes's civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000).  Stutes might also argue that, once the Vermont defendants have been dismissed, this Court has subject matter jurisdiction by virtue of diversity of citizenship.  In that event, the

controlling statute is 28 U.S.C. § 1391(a), which provides that venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1381(a).

Subsection (1) of either § 1391(a) or § 1391(b) does not apply here, since the defendants do not all reside in the same district.  The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ."  28 U.S.C. § 1391(a)(2), (b)(2).  The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly."  <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F.3d 353, 356 (2d Cir. 2005).

In this case, the principal events took place at the correctional facility in Oklahoma.  Accordingly, venue is most appropriate in that state under subsection

12

(2).  See Lee v. Corrections Corp. of America, 2007 WL 4225405, at *2-*3 (D. Hawaii Nov. 26, 2007); Basargin v. Corrections Corp. of America, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005); Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia).  Because this action could have been brought in Oklahoma, subsection (3) of both §§ 1391(a) and (b) is inapplicable.  See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

     Having determined that venue is most appropriate in Oklahoma, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer.  "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted).  In making this determination, consideration should be given to the ultimate goal of

the "expeditious and orderly adjudication of cases and controversies on their merits."  <u>Goldlawr, Inc. v. Heinman</u>, 369 U.S. 463, 466-67 (1962).

Stutes commenced this action several months ago.  Because of his *in forma pauperis* status, service has been initiated by the U.S. Marshals Service.  To dismiss the case and require re-filing in Oklahoma would result in unnecessary duplication of effort on the part of the government, additional effort for the plaintiff, added expense for the defendants, and unnecessary delay for all parties.  I therefore recommend that, in the interest of justice, the remainder of the case be TRANSFERRED to Oklahoma.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 19) be GRANTED in part, and that all claims against defendants Hofmann and Oddy be DISMISSED.  I further recommend that the remainder of this case, including all pending motions, be TRANSFERRED to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1406.

14

Dated at Burlington, in the District of Vermont, this <u>9th</u> day of January, 2008.

```
                         /s/ Jerome J. Niedermeier
                         Jerome J. Niedermeier
                         United States Magistrate Judge
```

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).